**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DITSRICT OF GEORGIA
ATLANTA DIVISION**

DIEGO A. MOLINA-SALAS,       )
                            )
    Plaintiff,            )      CIVIL ACTION NO.
                            )      <u>1:14:01092-AT</u>
v.                          )
                            )      **<u>JURY TRIAL DEMANDED</u>**
ALDRIDGE CONNORS, LLP;       )
FEDERAL NATIONAL MORTGAGE     )
ASSOCIATION, As Trustee for the FNMA )
AA MAIN 0006 TRUST; and      )
BANK OF AMERICA, N.A.,        )
                            )
    Defendants.           )
_____ )

<u>**PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**</u>

COMES NOW Plaintiff Diego A. Molina-Salas, by and through his undersigned counsel of record, and files this consolidated response in opposition to (1) Defendants Bank of America, N.A. ("BANA") and Federal National Mortgage Association, as Trustee for the FNMA AA Main 0006's ("Fannie Mae" or "Fannie Mae as Trustee") (collectively, "Trust Defendants") Motion to Dismiss, and (2) Defendant Aldridge Connors, LLP's ("Aldridge") Motion to Dismiss. For the reasons stated below, Plaintiff has properly pleaded viable causes of action for

each claim and request for relief in his Complaint.  Thus, Plaintiff respectfully requests that the Court deny Defendants' Motions to Dismiss.

## STATEMENT OF FACTS

This Action concerns Defendants' efforts to foreclose the property located at 2623 Winding Lane, Atlanta, DeKalb County, Georgia 30319 (hereinafter, the "Property").  (Compl. ¶ 1.)  On October 30, 1998, Plaintiff executed a Security Deed in favor of Washtenaw Mortgage Co. ("Washtenaw").  (Compl. ¶ 11.)  The Security Deed purportedly secures a debt evidenced by a note executed in favor of Washtenaw on the same day.  (Compl. ¶ 11.)  On November 9, 1998, Washtenaw executed a "Corporation Assignment of Real Estate Mortgage" in favor of Federal National Mortgage Association by virtue of an unrecorded assignment (the "Unrecorded Assignment").  (Compl. ¶ 12.)

On February 27, 1999, Washtenaw executed a "Corporation Assignment of Security Deed" in favor of BANA that was recorded on April 24, 2001 ("1st Recorded Assignment").  (Compl. ¶ 14.)  BANA then executed an assignment on June 17, 2011 in favor of BAC Home Loans Servicing, LP ("BAC"), recorded on June 27, 2011.  (Compl. ¶ 15.)  BAC was merged out of existence on July 1, 2011. (Compl. ¶ 16.)

According to a transfer of servicing notice sent to the Plaintiff and the Notice of Sale Under Power, Fannie Mae as Trustee for FNMA AA Main 0006

claims to be the creditor to whom the debt is owed.  (Compl. ¶¶ 9, 18, Ex. J, K.) Washington D.C. law governs the Trust.  (Compl. ¶ 23.)  The original Note and Security Deed were never physically transferred and delivered to Fannie Mae as Trustee.  (Compl. ¶ 23.)

BANA claims to be the current assignee of the Security Deed as successor-by-merger to BAC.  (Compl. ¶ 8, Ex. J.)  BANA, on behalf of Fannie Mae, previously sought to exercise the power of sale provision contained in paragraph 21 of the Security Deed by publishing a Notice of Sale Under Power, scheduling the property for non-judicial foreclosure on February 4, 2014.  (Compl. ¶ 29, Ex. J.)  Paragraph 21 of the Security Deed states, *inter alia*, that upon notice of default, "Lender, at its option, . . . may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law.  Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale."  (Compl. Ex. C, ¶ 21.) Aldridge is the foreclosure law firm that commenced foreclosure proceedings as agent for BANA and Fannie Mae as Trustee. (Compl. ¶ 6, Ex. J.)

## ARGUMENT[1]

## I.   STANDARD OF REVIEW

### a.  Motion to Dismiss Standard

---

[1] Plaintiff explicitly incorporates all arguments presented in his original Complaint (Dkt. [1-1] at 10-74) into this Response by reference.

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993). A complaint attacked by a Rule 12(b) (6) motion to dismiss generally does not need detailed factual allegations:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim," but a complaint must also "provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is subject to dismissal. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

<u>Sutton v. Bank of Am., N.A.</u>, 2012 U.S. Dist. LEXIS 90240, *5-*6 (N.D. Ga. 2012). In other words, "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [that supports the plaintiff's claim]." <u>Twombly</u>, 550 U.S. at 556.

### b. <u>Hierarchy of Legal Authority</u>

This Court is bound by the substantive law of the State of Georgia in consideration of this case, which includes Georgia statutes and the pronouncements of Georgia's highest court. This Court is also bound by the decisions of the Georgia Court of Appeals on issues that Georgia's highest court has not ruled upon, unless persuasive evidence exists that Georgia's highest court would rule otherwise. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); King v. Order of United Commercial Travelers of Am., 333 U.S. 153 (1948); Fidelity Union Trust Co. v. Field, 311 U.S. 169 (1940); West v. American Tel. & Tel. Co., 311 U.S. 223, 236–237 (1940); Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983); FDIC v. Skow, 2012 U.S. Dist. LEXIS 184753, at *8-*10 (N.D. Ga. Aug. 14, 2012) (quoting Silverberg (710 F.2d at 690) at *9-*10).

When attempting to interpret and apply the substantive law of the State, this Court is bound by the following rule espoused by the Georgia Supreme Court regarding conflicts between Georgia statutes and Georgia court decisions:

> Courts like to preserve the law they and their predecessors have made in deciding cases. But as long as legislation does not violate the Constitution, when the Legislature says something clearly — or even just implies it — **statutes trump cases**.

(Emphasis added.) Couch v. Red Roof Inns, Inc., 291 Ga. 359, 364 (2012). In other words, when a Georgia statute and Georgia court decisions directly conflict, **the statute controls**. Finally, district court opinions are persuasive only and are not

controlling. <u>See</u> <u>Skow</u>, 2012 U.S. Dist. LEXIS 184753, at *47-*48 (<u>quoting</u> <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004) ("[t]he general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions")). Thus, when interpreting and applying Georgia substantive law, the hierarchy of authority is as follows: (1) Georgia statutes; (2) Georgia Supreme Court decisions; (3) Georgia Court of Appeals decisions; and (4) federal court decisions and decisions from other jurisdictions.

## I.    <u>ALDRIDGE CONNERS, LLP IS A PROPER PARTY TO THIS ACTION</u>

Defendant Aldridge argues that this Court should dismiss the Complaint as to Aldridge because it is not a proper party to this action.  Specifically, Aldridge contends that it is not a proper party because it has no contractual relationship with, or any corresponding legal duty to Plaintiff, as it is not the holder, owner, servicer, or originator of the Note and/or Security Deed.  Aldridge further argues that Plaintiff has fraudulently joined Aldridge.

This argument has no basis in controlling Georgia law. Aldridge acted as the agent of the entity that attempted (and is still intending) to foreclose (i.e., BANA) by drafting a notice of sale and forwarding it to the DeKalb Champion newspaper for publishing. Consequently, Aldridge is (or would be) liable to Plaintiff for any

tort committed within the scope of this agency. <u>See</u> OCGA 10-6-85 (sentence two, clause two). By further consequence, Aldridge is also is a permissive party to a petition to enjoin the sale. <u>See</u> OCGA 9-11-20(a); <u>Meeks v. Roan</u>, 117 Ga. 865, 866 (1903) (for the proposition that the agent crying the foreclosure sale may be permissively joined to a petition seeking to enjoin the sale, but is not a necessary party); <u>Martin v. Approved Bancredit Corp.</u>, 224 Ga. 550, 552 (1968) ("An action will lie against a foreign corporation in the county where its attorney in fact is a resident to enjoin illegal exercise of a power of sale in a deed to secure debt. See *Smith v. Allen*, 222 Ga. 607 (151 SE2d 138); *Sellers v. Page*, 127 Ga. 633 (56 SE 1011); *Budget Charge Accounts v. George*, 214 Ga. 312 (104 SE2d 434). *The rationale of such decisions is that the resident attorney in fact and his principal are joint tortfeasors in said circumstances.*" (Emphasis added.))[2]

---

[2] To support its argument, Aldridge relies on <u>McCalla v. C.I.T. Fin. Servs.</u>, 235 Ga. App. 95 (1998), for the proposition that counsel in the foreclosure is not a proper party to a wrongful foreclosure claim. This argument was explicitly denied in <u>McCarter v. Bankers Trust Co.</u>, 247 Ga. App. 129, 130-131 (2000), which held that the portion of <u>McCalla</u> cited by Aldridge was *dicta* and was based on the particular facts of that case. <u>McCarter</u>, 247 Ga. App. at 131. (In fact, <u>McCarter</u> stands for the proposition that a law firm *may* be held liable for wrongful foreclosure. <u>Id.</u>) Rather, the <u>McCarter</u> Court held that the appellee foreclosure firm was not liable because (1) "there was a legal right to foreclose" (<u>id.</u> at 132), because (2) "McCarter, in her complaint, admit[ted] that the foreclosure was legally conducted" (<u>id.</u>), and because (3) "the evidence d[id] not show that there was any impropriety in the notice, advertisement, or sale at foreclosure" (<u>id.</u> at 131). Here, Plaintiff is alleging that there is not a legal right to foreclose, and that a foreclosure performed under the current set of facts would be unlawful. Thus, the outcomes of <u>McCalla</u> and <u>McCarter</u>, being fact-specific, do not support Aldridge's

Further, to the extent Aldridge asserts that it owes no duty to Plaintiff because it is a law firm and Plaintiff is its client's adversary, such an argument is not supported by Georgia law. While it is true that a law firm generally does not owe a duty to its client's adversary (see, e.g., McKenna Long & Aldridge, LLP v. Keller, 267 Ga. App. 171 (2004)), that rule is not absolute. See Yost v. Torok, 256 Ga. 92 (1986) (imposing liability in tort for abusive litigation); O.C.G.A. §§ 51-7-80 et seq. (codifying Yost); O.C.G.A. § 9-15-14. Further, that general rule does not apply when a lawyer or law firm is performing *non-legal work* for a client. Exercising a power of sale at a non-judicial foreclosure is not "legal work." See OCGA 15-19-50. Rather, it is debt collection and auctioneering; and it is regularly performed by non-attorneys in this State.[3] While there are several tasks incidental to non-judicial foreclosure that *do* involve legal work (for example, giving an opinion regarding the status of title (OCGA 15-19-50(4)), preparing assignments and deeds under power (OCGA 15-19-50(3)), overseeing the execution and delivery of the deed under power (OCGA 15-19-50(2)), and giving legal advice to clients seeking to non-judicially foreclose (OCGA 15-19-50(5)), the only acts that

---

assertion that Plaintiff could not state a claim against it for wrongful foreclosure if a sale is cried.

[3] For example, Auction.com, LLC cries several hundred foreclosure sales every month in counties throughout metro-Atlanta. See, e.g., <http://www.auction.com/search?search=Fulton+County%2C+GA&location=Fulton+County%2C+GA&auction_type=residential&asset_type=Foreclosure_Trustee >.

absolutely *must* be done in order for a non-judicial foreclosure sale to be valid in this State—namely, drafting and publishing a notice of sale and crying the sale—do *not* involve the "practice of law" (as that term is defined in OCGA 15-19-50).[4]

_____

[4] There is not a single Georgia case that has ever held that a law firm engaged in debt collection and auctioneering—neither of which constitute legal work—has no duty to those harmed by acts and omissions done by the law firm while engaged in such non-legal work. Quite the contrary:

> [I]n *Miller & Miller v. Wilson*, 98 Ga. 567, 569 (25 S.E. 578) (1896), [the] Supreme Court held that an attorney who merely acted as an agent to collect a debt and had no knowledge of the actual facts in the matter could still be sued. See also *Haas & Howell v. Godby*, 33 Ga. App. 218, 222-223 (125 S.E. 897) (1924). Further,
>
>> whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith, nor in case of an agent, that he delivers the property to his principal before receiving notice of the claim of the owner. If an agent takes the property of another without his consent and delivers it to the principal, it is a conversion, and trover will lie for the recovery of the property or for damages, as the plaintiff may elect. An agent, who for and in behalf of his principal takes the property of another without the latter's consent, is as to him guilty of a conversion, although being ignorant of the true owner's title, the agent may have acted in perfect good faith; and such agent may be sued in trover for the property, even after his delivery of it to his principal. Also such an agent may be sued jointly with his principal for such conversion.
>
> (Citations and punctuation omitted.)
> *Graham v. Frazier*, 82 Ga. App. 185, 195-196 (4) (60 S.E.2d 833) (1950).

McCarter v. Bankers Trust Co., 247 Ga. App. 129, 134 (2000) (Barnes, J. dissenting). The majority in McCarter did not overturn this old law cited by Justice Barnes in dissent.

In sum, it is clear that a creditor owes a duty of good faith to a borrower in all aspects of the mortgage transaction, as well as in relation to the enforcement of the terms of the note and/or foreclosure. OCGA 23-2-114.   State agency law imposes these same duties upon the creditor's agents. <u>See</u> O.C.G.A. 10-6-85 (sentence two, clause two).   Thus, as the agent of the purported creditor, Aldridge is a proper party to Plaintiff's Complaint, which asserts that any future foreclosure sale would be unlawful.[5]

## II.   <u>PLAINTIFF'S FIRST CAUSE OF ACTION STATES A CLAIM FOR RELIEF</u>

Plaintiff's first cause of action states a claim against the Defendants for the following reasons:

(1) Plaintiff's first cause of action (a) is not a claim in tort for wrongful foreclosure or a claim for attempted foreclosure, but rather is a petition for the Court to enjoin a *threatened* tort, i.e., a *future* wrongful foreclosure, and (b) has been adequately pleaded;

(2) Plaintiff's request for permanent injunctive relief has been adequately pleaded;

---

[5] By consequence, Aldridge has not been fraudulently joined, and this Action must be remanded for lack of subject matter jurisdiction. Plaintiff addresses Defendants' fraudulent joinder argument in greater detail in his Motion to Remand to Superior Court.

(3) Each of the three wrongful acts enumerated by Plaintiff would be sufficient to set forth a claim for wrongful foreclosure if a foreclosure sale were to occur;

(4) Plaintiff has standing in the context of an equity or a tort action to challenge title to both the Note and to the subject Security Deed;

(5) Even assuming *arguendo* that the debt is in default, Plaintiff can still establish causation; and

(6) Plaintiff is not required to tender any purported arrearage in order to enjoin a foreclosure, because (a) the foreclosure would be void and unlawful if performed, and (b) tender is futile.

Thus, this Court should deny Defendants' request for dismissal of the First Cause of Action.

### A. Plaintiff's First Cause of Action is a Petition to the Court to Enjoin a Threatened Tort and not a Claim for Wrongful Foreclosure

First, Defendants argue that Plaintiff's first cause of action fails to state a claim because a claim for wrongful foreclosure cannot be brought until a foreclosure has occurred. However, Plaintiff's first cause of action is not a tort claim for wrongful foreclosure. Rather, it is a petition in equity for the Court to enjoin a threatened tort, i.e., a *future* wrongful foreclosure performed by Fannie Mae as Trustee for the FNMA AA Main 0006 (hereinafter, "the Trust"), *or* by any of its agents, successors, or assigns (including BANA—the servicer, and Aldridge—the foreclosure firm).

## B. Plaintiff Has Adequately Pleaded his Request for Permanent Injunctive Relief

Next, Defendants assert that in order to obtain an injunction Plaintiff must plead the elements necessary to show he is entitled to preliminary injunctive relief under Fed. R. Civ. P. 65.  To the extent that Plaintiff requested this Court to grant an injunction specifically directing Defendants to halt the February 4, 2014 foreclosure sale, Plaintiff agrees that this request for relief is now moot.  However, in his Complaint Plaintiff additionally petitions the Court to grant an injunction *permanently* enjoining Defendants from taking future action to foreclose or gain possession of Plaintiff's property.  (See Compl. ¶ 68.)

A permanent injunction is a substantive remedy for which Georgia substantive law applies—*not* Federal law. See Port of New York Authority v. Eastern Air Lines, Inc., 259 F. Supp. 745, 753 (1966); contra. Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991) (stating that the court applies federal law when determining whether to issue a *preliminary* injunction, which is a procedural remedy).

Under Georgia law, a permanent injunction may be issued by final decree after a hearing on the merits when the issuance of such an injunction is necessary to protect or enforce the legal rights of the petitioner. See O.C.G.A. 9-2-3. To obtain a permanent injunction under Georgia law, a petitioner must demonstrate that (1) he is being or will be harmed by one of the acts enumerated in O.C.G.A. 9-

5-1;[9] and (2) he has no adequate remedy at law to make him whole.[10] In addition, he must succeed at a hearing on the merits. O.C.G.A. 9-5-10. Thus, where a petitioner establishes the first two criteria and succeeds on the merits of his claims, and where "the grant or denial of equitable relief is merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues of law were resolved,"[11] it is proper for a court to issue a permanent injunction under Georgia law.

In the present case, Plaintiff has adequately pleaded facts to support his request for a permanent injunction.  First, Plaintiff alleges he is being or will be harmed by one of the acts enumerated in O.C.G.A. 9-5-1, namely a future wrongful foreclosure (discussed in greater detail below).  Second, Plaintiff has no adequate remedy at law to prevent Defendants from wrongly scheduling another foreclosure sale (as they previously had scheduled for February 4, 2014), and following through with such foreclosure sale in order to take possession of his property.  Thus, Plaintiff has sufficiently pleaded the requirements for obtaining a permanent injunction, and is entitled to such relief if he succeeds on the merits of his case.

---

[9] "Equity, by a writ of injunction, may restrain proceedings in another or the same court, a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience…" O.C.G.A. 9-5-1.

[10] O.C.G.A. 9-5-1.

[11] (Footnote omitted.) Harris v. Gilmore, 265 Ga. App. 841, 842 (2004).

### C. Defendants Have Failed to Show that Each of the Three Wrongful Acts Alleged in the Complaint Are Insufficient to Support a Claim of Future Wrongful Foreclosure Warranting a Permanent Injunction

Next, Defendants argue that Plaintiff's allegations that BANA lacked standing to foreclose and that Defendants violated O.C.G.A. 44-14-162 are without merit.  More specifically, Defendants contend that Plaintiff bases his claim on the argument that BANA lacked authority to foreclose because the "Final Assignment" was made to BAC, and there was no subsequent assignment to BANA. Defendants argue in response to Plaintiff's purported argument that no further assignment was required because BAC merged with BANA.  In addition, Defendants argue that Plaintiff as the borrower lacks standing to attack the assignment.   Further, Defendants argue that Plaintiff cannot maintain a request for equitable relief related to a wrongful foreclosure because he has neither pleaded that he is current on his payments nor tendered the amount allegedly owed.  Finally, Aldridge argues that no wrongful foreclosure occurred because the notice requirements under O.C.G.A. § 44-14-162.2 were met.

First, Plaintiff's first cause of action establishes that, given the current state of facts, the sale will be tortious if it is cried, thereby supporting Plaintiff's request for injunctive relief. "A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied. A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the

14

individual." O.C.G.A. 51-1-1. Wrongful foreclosure is a violation of the statutory duty to exercise the power of sale fairly and in good faith (see O.C.G.A. 23-2-114), and is "a tort compensable at law." Clark v. West, 196 Ga. App. 456, 457 (1990). Generally speaking, there are two broad categories of foreclosure sales that can give rise to a wrongful foreclosure claim: (1) "void sales," i.e., foreclosure sales that are void as a matter of law; and (2) "voidable sales," i.e., otherwise valid sales where circumstances or defects surrounding the sale serve to chill the bidding, thereby causing a grossly inadequate sales price, and subjecting the sale to being set aside in equity. See Racette v. Bank of Am., 318 Ga. App. 171, 175 (2012). The following are examples of void sales: (1) where the purported creditor has no legal right to foreclose;[12] (2) where O.C.G.A. 44-14-162(b) has not been complied with prior to foreclosure;[13] (3) where the power of sale provision in the security deed has been breached;[14] (4) where an incorrect legal description was placed in

---

[12] Brown v. Freedman, 222 Ga. App. 213, 214 (1996); DeGoyler v. Green Tree Servicing, LLC, 291 Ga. App. 444, 449 (2008).

[13] Duke Galish, LLC v. SouthCrest Bank, 314 Ga. App. 801, 802-803 (2012).

[14] Howser Mill Homes, LLC v. Branch Banking & Trust Co., 318 Ga. App. 148, 150 (2012) (stating that, "[i]n *MPP Investments v. Cherokee Bank*, [288 Ga. 558 (707 S.E.2d 485) (2011),] the Supreme Court of Georgia held that a foreclosure sale was not valid where the security deed required the secured party to give notice before the party could exercise the power of sale contained in the deed, and the party did not give the required notice before foreclosing"); id. at 150 & n.6 (2012) (citing Proudfit v. Oliver, 150 Ga. 707 (1920), for the proposition that, "where the advertisement of foreclosure sale did not conform to the requirements of the security deed, the foreclosure sale was invalid and did not divest title of the grantor to the property").

the notice of sale;[15] and (5) where the notice of sale was not given in compliance with O.C.G.A. 44-14-162.2.[16] Further, a wrongful foreclosure claimant establishes the duty-breach elements of the tort when the sale is shown to be void as a matter of law. See Racette, 318 Ga. App. at 175 (for the proposition that a claimant can show that the duty to exercise the power of sale fairly and in good faith has been violated by first establishing that the sale was void as a matter of law).

Here, if established, any one of the three Wrongful Acts enumerated by Plaintiff in his Complaint (Compl. ¶¶ 33-49) would make the sale void and wrongful as a matter of law.

### 1.  The First Wrongful Act States a Claim

As an initial matter, Plaintiff notes that the Defendants do not address Plaintiff's allegations under "Wrongful Act #1: Lack of Standing to Foreclose" (Compl. ¶¶ 33-45) that Fannie Mae as Trustee, the purported owner of the Note, does not have standing to invoke the power of sale.  Accordingly, with respect to the first wrongful act, this Court should deny Defendants' request to dismiss Count I. However, in an abundance of caution, Plaintiff will address the first wrongful act.

---

[15] Racette, 318 Ga. App. at 175; Howser Mill Homes, LLC, 318 Ga. App. at 150, 150 & n.5.

[16] O.C.G.A. 44-14-162(a); Racette, 318 Ga. App. at 175; Howser Mill Homes, LLC, 318 Ga. App. at 150, 150 & n.5.

Under the first wrongful act, Plaintiff alleges that any future foreclosure will be void because (1) the purported creditor, Fannie Mae as Trustee, has no legal right to foreclose; and, by consequence, (2) a foreclosure initiated by Fannie Mae as Trustee or by any of its agents would the breach the Security Deed's power of sale provision and would be void as a matter of law.  The Security Deed in the present case states that, upon default by the Borrower, the "**Lender** . . .  may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law." (See Compl. Ex. C, ¶ 21.)  However, Fannie Mae as Trustee cannot invoke the power of sale as the "Lender" because although Fannie Mae purportedly purchased the Note, the Trust never took valid title to the Note. This legal argument is based on Plaintiff's allegations that Fannie Mae as Trustee failed to abide by the threshold legal requirements for establishing a trust over property under D.C. Code §§ 19-1304.01, 1904.04.18, because the Note and Security Deed were never transferred to the Trust by an approved method of delivery. As a result, the Note never became part of the Trust corpus.  Thus, Fannie Mae as Trustee has no enforceable interest in the Note, and Fannie Mae (or any other Defendant as its agent) [17] cannot legally foreclose.

---

[17] Plaintiff acknowledges that You v. JPMorgan Chase Bank, N.A. (293 Ga. 67 (May 20, 2013)) is controlling law. However, You is inapposite to the allegations brought in Plaintiff's Complaint. You held that a servicer holding legal title pursuant to O.C.G.A. 44-14-162(b) may foreclose in its own name, regardless of whether it is also a party entitled to enforce the Note under O.C.G.A. 11-3-301.

Next, Plaintiff has standing in equity to challenge the right to foreclose of *any* party seeking to foreclose the equity of redemption in the Property, regardless of whether said person or entity is the trustee of a securitization trust, and regardless of whether the Plaintiff is a party to or beneficiary of the trust instrument. O.C.G.A. 23-2-34 explicitly allows privies in law, fact, or estate to seek equitable relief against parties that are not bona fide purchasers (a) for value, and (b) without notice.[18] Plaintiff is a privy in fact with any person or entity that attempts to foreclose his equity of redemption;[19] and he is a privy in estate with the

---

You, 293 Ga. at 74. You also held that a servicer did not have to own a beneficial interest in the Note under OCGA 10-3-1 in order to foreclose in its own name. Notwithstanding these rules of law, state agency law still applies to real estate transfers, including to transfers performed pursuant to a power of sale. See id., 293 Ga. at 74 (quoting White v. First Nat. Bank, 174 Ga. 281, 293 (1932)). The maxim that "an agent can do no more than what its principal could have done" applies in the foreclosure context. Cf. Godley Park Homeowners Ass'n v. Bowen, 286 Ga. App. 21, 22 (2007); O.C.G.A. § 10-6-5; Tippins v. Cobb County Parking Auth., 213 Ga. 685, 688 (1957); Turnipseed v. Jaje, 267 Ga. 320, 322 (1996) (for the proposition that state agency law applies to transfers of real property); O.C.G.A. 23-2-114 (same). Thus, a "Lender" that happens to be the trustee of a trust and that is in compliance with all of the foreclosure statutes, but that lacks power to foreclose due to some other reason (e.g., lack of capacity pursuant to the terms of its trust instrument), has **no capacity to foreclose**, and cannot escape this result by attempting to foreclose through its agent.

[18] OCGA 23-2-34 is a "standing" provision that applies to all forms of equitable relief, not just to deed reformation. Volunteer State Life Ins. Co. v. Powell-White Co., 187 Ga. 705, 706-707 (Feb. 23, 1939).

[19] Cf. Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327, 329 (1980) ("[w]e are in agreement with *Langley* insofar as it holds that the breach of this duty to conduct the sale "fairly" gives rise to a claim for damages to the injured holder of the equity of redemption"); OCGA 44-14-162.1; Roylston v. Bank of Am., N.A., 290 Ga. App. 556, 559 (2008).

grantee on the Security Deed *and every assignee to the Security Deed*.[20] Further, a request to enjoin a future wrongful foreclosure is a petition for "equitable relief." See O.C.G.A. 23-2-34 (stating that "[e]quity will grant relief as between the original parties or their privies in law, in fact, or in estate..."); O.C.G.A. 53-12-6(a) (stating that "[t]rusts are peculiarly subjects of equity jurisdiction").   This challenge to the right to foreclose may be brought by simply pointing out that the trustee has no capacity to act pursuant to the terms of its own trust instrument, which trust instrument would have the force of law in Georgia. See O.C.G.A. 53-12-7(a); Rose v. Waldrip, 316 Ga. App. 812, 815 (2012).[21]

In summary, Plaintiff has stated a viable legal theory in his Complaint with regard to his allegations that the Trustee lacks the power to foreclose, and, by consequence, that none of its agents can foreclose either. Therefore, construing the facts in the light most favorable to Plaintiff, Plaintiff has adequately stated a claim for Count I pursuant to Wrongful Act #1.

### 2.  The Second Wrongful Act States a Claim

---

[20] See Rawson v. Brosnan, 187 Ga. 624, 628 (Feb. 23, 1939); Gregorakos v. Wells Fargo Nat'l Ass'n, 285 Ga. App. 744, 746-747 (2007) (citing Amin v. Guruom, Inc., 280 Ga. 873, 874-875 (2006)).

[21] "Broadly speaking, the terms of a trust are whatever the settlor intended them to be at the time of the creation of the trust, so long as those terms are permitted by law." (Internal quotes, parenthetical, and citations omitted.) Rose, 316 Ga. App. 812, 815 (2012).

### a. Plaintiff has standing to (1) assert a violation of O.C.G.A. 44-14-162(b), and (2) to attack assignments generally.

Defendants argue that a borrower cannot challenge the validity of the assignment of a security deed, citing to <u>Larose v. Bank of Am., NA</u>, 321 Ga. App. 465, 467 (2013), and <u>Montgomery v. Bank of Am.</u>, 321 Ga. App. 343, 346 (2013). However, this Court should not rely on either of those cases to support a dismissal of Plaintiff's claims.

With respect to the decision in <u>Montgomery</u>, that Court did not consider or discuss O.C.G.A. § 23-2-34 when it determined that the borrower in that case had no basis for contesting the validity of the assignment.  See <u>Montgomery</u>, 321 Ga. App. at 345-46.  Further, the Court cited only to the general statute regarding who can bring an action in contract, O.C.G.A. § 9-2-20(a), to support its conclusion that because an assignment is a contract, it can only be challenged by either of the two parties to the contract.  <u>Id.</u> at 346.  However, the Court did not explain or cite to controlling authority to support the supposition that an assignment can only be challenged in the contract context.

Further, <u>Montgomery</u>'s rationale that a borrower cannot attack an assignment because an assignment is a contract to which a borrower is not a party is flawed given that **every** deed is a contract, and given that O.C.G.A. § 23-2-34 allows deeds to be attacked in equity when no contractual privity exists. (In fact, the only logical conclusion is that an assignment of a security deed **is itself a deed**,

20

given that (1) a security deed is a deed absolute (O.C.G.A. § 44-14-60), and given that (2) an assignment of a security deed (a) conveys legal title, and (b) must be executed with the same formalities as deeds (O.C.G.A. § 44-14-64(a).[22]) Montgomery's rationale essentially renders O.C.G.A. § 23-2-34's "in fact, or in estate" language meaningless.  However, Georgia Courts are required to avoid making holdings that render statutory language meaningless (unless the holding is declaring the statute unconstitutional).  See O'Neal v. State, 288 Ga. 219, 220-21 (2010); Webb v. Echols, 211 Ga. 724, 726 (1955); Couch, 291 Ga. at 364.  Thus, because the Montgomery Court's holding that a borrower has no standing to

---

[22]   The general rule is that the transfer of a power of sale does not need to convey title to the property described. OCGA 23-2-114 ("…such powers may so be exercised regardless of whether or not the transfer specifically includes the powers or conveys title to the property described"). However, in the non-judicial foreclosure context, the foreclosing entity must hold record legal title at the time of foreclosure. OCGA 44-14-162(b). Thus, as a matter of practice, the vast majority of assignments of security deeds explicitly state that legal title to the property is being transferred by virtue of the assignment. The assignments in question in the instant matter contain language that purports to convey legal title to the Property. See (Compl. Exs. "E", "F", "G") (Dkt. 1-1 at 40-46). See also Titshaw v. Northeast Ga. Bank, 304 Ga. App. 712, 714-715 (2010); Cary v. Guiragossian, 270 Ga. 192, 194 (1998) (citing Jones v. Phillips, 227 Ga. App. 94 (1997); Pindar & Pindar, Ga. Real Estate Law & Procedure (4th ed.), § 19-84).

Given that the instant assignments are deeds (i.e., purported conveyances of title), they "must meet all the standards of validity applicable to deeds generally, including the naming of a grantor and a grantee, sufficient words of conveyance or grant, a valid description of the property conveyed, proper execution *and attestation*, and an effective delivery. (Emphasis added; internal quotes and citations omitted.) Jones v. Phillips, 227 Ga. App. 94, 95 (1997). In other words, because the instant assignments are deeds, they are invalid and did not convey legal title if they were improperly attested.

21

contest the validity of an assignment is in direct conflict with O.C.G.A. § 23-2-34, this Court should follow the statute.  See Couch, 291 Ga. at 364.

Additionally, with respect to Larose (decided on the same day as Montgomery), that Court did not rule on the issue of a borrower's standing to challenge an assignment in that case.  Instead, the Larose Court rejected Plaintiff's allegation of an invalid security deed assignment on the merits, holding that the language in the security deed granted the Mortgage Electronic Registration System, Inc. ("MERS") the power of assignment.  Larose, 321 Ga. App. at 467-68.[23]  Therefore, Defendants' reliance on Larose as authority to support its standing argument is unfounded.

In the present case, as discussed above, Plaintiff has standing under O.C.G.A. § 23-2-34 to challenge an assignment of his Security Deed **in equity**[24]

---

[23] The Court cited to an unpublished opinion from the Northern District of Georgia for the proposition that a borrower has no standing to challenge an assignment. Larose, 321 Ga. App. at 467.  However, the Court did not rely on that decision for its holding.  Further, it is interesting to note that the Larose Court did not rely on the reasoning in (or even cite to) Montgomery when it considered Larose's second enumeration of error, which asserted that the MERS assignment was invalid.  Id. at 467-68.  In contrast, the Larose Court explicitly relied on the Court's reasoning in Montgomery when it considered Larose's first enumeration, which asserted that a transfer of the Note to the foreclosing entity (along with the security deed) was necessary to conduct a valid foreclosure.  Id. at 466-67. Thus, it appears that even the Larose Court was not convinced by the Montgomery Court's reasoning related to a borrower's standing to challenge an assignment.

[24] Attacking the validity of an assignment is also proper in actions related to foreclosure that sound in *tort* and that seek money damages. This is the case because, if a lender or servicer that is attempting to foreclose has no legal right to

(as opposed to at law in a contract action), because (1) Plaintiff is a privy in estate to every assignor and assignee of the Security Deed; and (2) the assignees of the Security Deed had constructive notice of Plaintiff's equity in the Property at the time said assignees attempted to take title. Cf. Rawson v. Brosnan, 187 Ga. 624, 628 (Feb. 23, 1939); Gregorakos v. Wells Fargo Nat'l Ass'n, 285 Ga. App. 744, 746 (2007); Garlington v. Blount, 146 Ga. 527, 527 (1917); Yeazel v. Burger King Corp., 241 Ga. App. 90, 95 (1999) (for the proposition that a grantor on the underlying security deed is in privity of estate with the assignees of the security deed).   Thus, because Plaintiff is in privity of estate with the assignees on the assignments, he has standing in equity to attack the assignments.

### b.  BANA does not hold title

Defendants argue that no further assignment was necessary in order for BANA to enforce the terms of the Security Deed because BAC was acquired by

---

do so because it has no valid interest in the security deed in question, (i.e. no "standing" to foreclose), the foreclosure is wrongful as a matter of law. See DeGolyer v. Green Tree Servicing, LLC, 291 Ga. App. 444, 448-49 (2008). The foreclosing entity would be breaching a legal duty that it owes to the aggrieved party to not foreclose his equity of redemption when it is not legally authorized to do so. See Footnote 19, supra; O.C.G.A. § 51-1-8; Criswell Baking Co. v. Milligan, 77 Ga. App. 861, 872 (1948) ("It is not uncommon in actions for negligence for the plaintiff to allege various breaches of duty as constituting negligence on the part of the defendant. The plaintiff may rely upon an act or omission as constituting negligence as a matter of fact under the circumstances, or upon the violation of a statute as amounting to negligence per se or as a matter of law. Furthermore, the facts may be so pleaded as to show negligence of both classes in the same action.") A foreclosing entity that took title pursuant to an invalid assignment would have no legal right to foreclose.

and merged with BANA.  To support this contention, Defendants rely on O.C.G.A. § 14-2-1106(a)(2), providing that every contract possessed by each party entering into the merger is vested in the surviving corporation without any further act. However, this merger provision governs business corporations only. <u>See</u> OCGA 14-2-1108(a). Instead, O.C.G.A. § 7-1-557 applies in this context where a non-banking entity (BAC) is merging with a national bank (BANA),[25] and this code section does not contain any provision similar to § 14-2-1106(a)(2). <u>See</u> OCGA 14-2-1108(b).

Thus, given the current state of title, a foreclosure by BANA would be void as a matter of law and should be enjoined.  For these reasons, the second wrongful act states a plausible claim.

### 3.  The Third Wrongful Act States a Claim

Plaintiff alleges that BANA cannot lawfully foreclose based on either the assignment to BANA or the assignment to BAC because BANA has never held valid title to the Property.  BANA never acquired title to the Property because the grantor on the First Recorded Assignment (purported assignment from Washtenaw in favor of BANA) is not the same entity as the grantee on the prior Unrecorded Assignment (from Washtenaw in favor of Fannie Mae).  <u>See</u> (Compl. ¶¶ 12-15);

---

[25] OCGA 7-1-536 does not apply. It only applies when a bank or trust company chartered in Georgia merges into another bank or trust company chartered in Georgia.

Cary v. Guiragossian, 270 Ga. 192, 194 (1998) (citing Jones v. Phillips, 227 Ga. App. 94 (1997); Pindar & Pindar, Ga. Real Estate Law & Procedure (4th ed.), § 19-84); Vatacs Group, Inc. v. U. S. Bank, N.A., 292 Ga. 483, 486 (Feb. 4, 2013) (stating that "execution and delivery of a valid deed is necessary to convey title" (citing Smith v. Lockridge, 288 Ga. 180, 183-184 (2010))); cf. Racette v. Bank of Am., N.A., 318 Ga. App. 171, 175 (2012); Brock v. Yale Mortg. Corp., 287 Ga. 849, 852-853 (2010) (for the proposition that even a bona fide purchaser cannot take title from a grantor that does not hold valid title). Because the transferor on the First Recorded Assignment (Washentaw) did not hold title to the Property at that time, title to the Property was not conveyed to the transferee (BANA) or to any of its successors in interest.

### D. Plaintiff Can Prove Causation and Does Not Need to Tender

Finally, Defendants argue that Plaintiff cannot prove causation because any alleged injury is due his default on the mortgage.  Defendants further maintain that Plaintiff cannot maintain a request for equitable relief because he has not tendered any amount owing under the loan.  However, Plaintiff has adequately alleged causation, and does not need to tender (to a party that never owned a beneficial interest in his Note) in order to obtain relief from what would be a void sale.

First, any assertion that Plaintiff cannot establish causation because the mortgage is in arrears is simply an incorrect statement of Georgia law.  In Georgia,

"[a] claim for wrongful [foreclosure] can be asserted even though a debt is in default." Brown v. Freedman, 222 Ga. App. 213, 215 (1996). Any assertion to the contrary is grounded in the misguided notion that "but for" means "sole cause." This is not the case. In this regard, Barrett v. Mayor, etc., of Savannah, 9 Ga. App. 642, 645(3) (1911), is highly instructive:

> To make the [defendant] liable for an injury caused by a defect…, the defect need not have been the sole cause of the injury, but that if, besides such defect, there was another cause, not attributable to the negligence of the injured person, and which contributed directly to the result, the [defendant] might still be liable, provided the injury would not have been sustained but for the defect…

In the foreclosure context, when a wrongful foreclosure claim based on lack of standing to foreclose is brought (i.e., when the debtor asserts that the foreclosing entity did not have the legal right to foreclose), a claimant can establish but-for causation *as to the particular defendant* that foreclosed without the legal right to do so. Thus, Defendants' motions cannot be granted based on a lack of causation.[26]

Second, given that Fannie Mae as Trustee never has held valid title to the Note, nothing has ever been owed to either Fannie Mae as Trustee or to its agents. Thus, Plaintiff is not required to tender to Fannie Mae as Trustee or to BANA in order to obtain equitable relief. See e.g. Brown v. Freedman, 222 Ga. App. 213, 214 (1996) (claim for wrongful foreclosure lies where purported creditor has no

---

[26] Further, a tort claim for wrongful foreclosure has not been brought, so causation is not even relevant.

right to foreclose). See also Duke Galish, LLC v. SouthCrest Bank, 314 Ga. App. 801, 803-04 (2012); Coates v. Jones, 142 Ga. 237, 239 (1914); Culver v. Lambert, 132 Ga. 296, 297 (1909) (cited approvingly in Duke Galish, LLC, 314 Ga. App. at 803); Benedict v. Gammon Theological Seminary, 122 Ga. 412, 416 (1905) (for the proposition that a void and illegal foreclosure may be set aside "at the instance of the borrower" without the need to tender the amount owing). See also Williamson v. Bank of Am., N.A., 2011 U.S. Dist. LEXIS 155582, *13-*14 (N.D. Ga. 2011) (citing Everson v. Franklin Discount Co., 248 Ga. 811, 813 (285 S.E.2d 530, 533) (1982);[27] Sapp v. ABC Credit & Inv. Co., 243 Ga. 151, 158 (253 S.E.2d 82, 87) (1979);[28] Davis v. Atlanta Finance Co., 160 Ga. 784, 785 (129 S.E. 51, 52)

---

[27]     [Defendant] argues that, under the maxim, "he who would have equity must do equity," the [Plaintiffs'] are not entitled to equitable relief because they have not offered to pay [Defendants] the amount of the indebtedness, which they admit is due. See [O.C.G.A. § 23-1-10]. In *Smith v. C. & S. Financial Corp.*, 245 Ga. 850 (268 SE2d 157) (1980), relied on by [Defendant], we held that the grantors under a deed to secure debt, although not personally liable on the underlying indebtedness, were not entitled to have set aside a sale under power, where they had made no tender of the indebtedness secured by the deed to secure debt. **The present case is distinguishable from *Smith*, supra, and is controlled by the holding in *Sapp v. ABC Credit &c. Co.*, 243 Ga. 151, 158 (253 S.E.2d 82) (1979), where we held that no tender was required where the complainant alleged that no sums were due under the notes involved because the notes were void and unenforceable.**

(Emphasis added.) Everson v. Franklin Discount Co., 248 Ga. 811, 813 (285 S.E.2d 530, 533) (1982).

[28]     He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the

(1925)).[29, 30]

---

suit. [O.C.G.A. § 23-1-10]. Under the usual rule, before [plaintiff] would be entitled to equitable relief, she must do equity and tender the amount due under the security deed and note. *Berry v. Government Nat. Mtg. Assn.*, 231 Ga. 503 (202 SE2d 450) (1973)…

However, [plaintiff] seeks to avoid the operation of this rule by alleging that *no sums are due under the instruments in question*. Her argument is that [] the note…is void and neither principal nor interest is due…While a mere allegation in a complaint that "no sums are due" may not be sufficient to excuse tender, here [plaintiff] has shown a genuine issue of material fact on the matter and she is entitled to establish her contention at trial. **If, in fact, no sums are due, her failure to tender is excused.** See, *Davis v. Atlanta Finance Co.*, 160 Ga. 784 (129 S.E. 51) (1925).

(Italics in original; bolding of text added.) <u>Sapp v. ABC Credit & Inv. Co.</u>, 243 Ga. 151, 158 (253 S.E.2d 82, 87) (1979).

[29] The foregoing ruling does not violate the principle that "he who would have equity must do equity and give effect to all equitable rights in the other party respecting the subject-matter of the suit," as embodied in [O.C.G.A. § 23-1-10], and applied in *Liles* v. *Bank of Camden County,* 151 *Ga.* 483 (107 *S.E.* 490), **for the reason that inasmuch as the [legal principle][] quoted above[] prohibits the collection of any part of the principal, interest, and expenses, the borrower is not required to pay back anything, and consequently owes no duty in equity to the lender.**

(Emphasis added.) <u>Davis v. Atlanta Finance Co.</u>, 160 Ga. 784, 785 (129 S.E. 51, 52) (1925).

[30] To be clear, Plaintiff is not arguing herein that the Note itself is unenforceable as to all the world, or that no entity on earth could ever foreclose on Plaintiff's Property (though Plaintiff reserves the right to avail himself of such an argument at a later time if the evidence warrants it). Rather, Plaintiff is arguing herein that (1) **Fannie Mae as Trustee** has no enforceable interest in the Note and no beneficial interest in the Security Deed; (2) that nothing is owed to **Fannie Mae as Trustee**; and (3) that neither **Fannie Mae as Trustee, <u>nor any of its agents,</u>** can non-judicially foreclose.

## III.   PLAINTIFF'S REMAINING CAUSES OF ACTION STATE CLAIMS FOR RELIEF

With regard to Plaintiff's second cause of action (breach of duty), Defendants argue that claim should be dismissed as repetitive.  Further, Defendants argue that Count Two cannot stand as a claim for breach of duty of good faith and fair dealing because Plaintiff has failed to allege a specific contract provision at issue or Defendants' specific conduct that breached such provision.

 Defendants' assessment is incorrect. First, Count Two is not repetitive of the other counts in his Complaint as Count Two is brought pursuant to O.C.G.A. § 51-1-8.  Count Two states a claim for "other wrongful conduct," see Calhoun First Nat'l Bank, 264 Ga. at 285 & n.1; (Compl. ¶¶ 51-54); namely, for "[failure to] exercise that care which a due regard to the rights of others requires" (Sharp-Boylston Co. v. Bostick, 90 Ga. App. 46, 48 (1954)), which duty "involves a degree of caution commensurate with the danger involved" (Lunsford v. Childs, 107 Ga. App. 210, 212 (1963)). Like every other actor in a civilized society, the Defendants owe the basic duty of ordinary care to those within their ambit of care. [31] Here, there was a high danger that Plaintiff would suffer harm in the form of a

---

[31]    "Th[is] legal duty [] arises out of the general duty one owes to all the world not to subject them to an unreasonable risk of harm. This has been expressed as follows: ". . . negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement, Torts, 2d, § 282.

void and unlawful foreclosure given the issues concerning the transfer of the Note and the Security Deed noted <u>supra</u>, of which the Defendants all had actual or constructive knowledge. Thus, Defendants had a duty to make reasonably certain that Plaintiff did not suffer harm in the form a void and unlawful foreclosure (i.e., they had a duty to make reasonably certain that there was a legal right to foreclose before commencing foreclosure proceedings). Nonetheless, the Defendants commenced foreclosure proceedings without making reasonably certain that there was a legal right to foreclose. As a result, Plaintiff has been harmed. His harm includes but is not limited to the cost associated with hiring a lawyer to help him defend his right in the Property, and the stress and anxiety associated with facing foreclosure and filing a lawsuit. (<u>See</u> Compl. ¶¶ 53-60).

Second, the Plaintiff's breach of duty claim also states a claim for the breach of the duty of good faith and fair dealing. "'Th[e] implied duty [of good faith and fair dealing] 'requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. [Cit.]' *Ihesiaba v. Pelletier*, 214 Ga. App. 721, 724 (2) (448 S.E.2d 920) (1994)."

<hr>

<u>Bradley Center, Inc. v. Wessner</u>, 250 Ga. 199, 201 (1982) (cited in <u>Peterson v. Reeves</u>, 315 Ga. App. 370, 373 (2012)). As noted in <u>Blanchard v. Reliable Transfer Co.</u>, 71 Ga. App. 843, 847 (1944),

> "The risk reasonable to be perceived defines the duty to be obeyed." **Palsgraf** <u>v.</u> **Long Island R. Co., 248 N.Y. 339 (162 N.E. 99, 59 A.L.R. 1253)**. The foresight of the consequences involves the creation of a duty. **MacPherson** <u>v.</u> **Buick Motor Co., 217 N.Y. 382 (111 N.E. 1050**, L.R.A. 1916F, 696).

Brown, 222 Ga. App. at 216. Defendants have invoked Paragraph 21 of the Security Deed without having the legal right to do so (because FNMA is not the "Lender", see supra), which act constitutes breach of contract and gives rise to a claim for a breach of duty of good faith and fair dealing. (See Compl. ¶ 42, 50-52.)

With respect to Plaintiff's third cause of action (declaratory judgment), Defendants argue that there is no controversy between Plaintiff and Defendants requiring resolution.   However, Plaintiff contends that there is an actual controversy and future uncertainty, because (1) Defendants will attempt to foreclose on Plaintiff's home in the future, and (2) the parties' interest in the Note, Deed, and Property are not clear. See J.M. Huber Corp. v. Ga. Marble Co., 239 Ga. App. 271, 273 (1999) ("[d]isputes concerning ownership of or right of access to land are classic candidates for resolution via declaratory judgment").[32] Therefore, Plaintiff asks this Court to deny Defendants' motions to dismiss Count III.

## Conclusion

For all of the foregoing reasons, Plaintiff requests that Defendants' Motions to Dismiss be DENIED.

Respectfully submitted this 21st day of May, 2014.

---

[32] Defendant Aldridge also argues that the Court should dismiss the Complaint because it is a "shotgun pleading."  However, as detailed under each section above relating to the individual counts, Plaintiff has identified his claims with sufficient clarity, and his Complaint should not be dismissed as a shotgun pleading.

/s/ William J. Smith_____
William J. Smith
Georgia Bar No. 710280
ATTORNEY FOR PLAINTIFF

SMITH LAW, LLC
P.O. Box 1396
Dacula, GA 30019
Direct: 770-674-1683
Office: 678-691-5676
Fax: 770-674-1122
william@smithlaw-llc.com

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiffs hereby certifies that the within and foregoing brief was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B), NDGa.

This the 21st day of May, 2014.

_[s] William J. Smith_____
William J. Smith
Georgia Bar No. 710280
ATTORNEY FOR PLAINTIFF

SMITH LAW, LLC
P.O. Box 1396
Dacula, GA 30019
Office: 678.691.5676
Direct: 770.674.1683
Fax: 770.674.1122
Email: william@smithlaw-llc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 21st day of May, 2014, served all parties in this matter with the foregoing via CM/ECF pursuant to LR 5.1(A)(3), NDGa.

_[s] William J. Smith_____
William J. Smith
Georgia Bar No. 710280
ATTORNEY FOR PLAINTIFF

SMITH LAW, LLC
P.O. Box 1396
Dacula, GA 30019
Office: 678.691.5676
Direct: 770.674.1683
Fax: 770.674.1122
Email: william@smithlaw-llc.com